# 14-4113-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



EDIT BUCKLAND,

*Plaintiff,*

VERONIQUE HEPLER, individually and on behalf of all others
similarly situated, DOMINIQUE MARCEAU,

*Plaintiffs-Appellants,*

*v.*

ABERCROMBIE & FITCH CO., ABERCROMBIE & FITCH STORES, INC.,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York (Central Islip)*

## BRIEF FOR DEFENDANTS-APPELLEES

Mark A. Knueve
Daren S. Garcia
Michael J. Ball
Natalie M. McLaughlin
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43215
614-464-5497

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendants-Appellees Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. (non-governmental corporate parties), certify that Defendant-Appellee Abercrombie & Fitch Stores, Inc., is a wholly owned subsidiary of Abercrombie & Fitch Management Co. Abercrombie & Fitch Management Co. is a wholly owned subsidiary of Abercrombie & Fitch Holding Corporation. Abercrombie & Fitch Holding Corporation is a wholly owned subsidiary of Defendant-Appellee Abercrombie & Fitch Co. Defendant-Appellee Abercrombie and Fitch Co. is a publicly traded entity with no parent corporation or publicly traded corporation owning 10% or more of its stock.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT OF JURISDICTION ....................................................... 2

ISSUES PRESENTED FOR REVIEW ................................................. 3

STATEMENT OF THE CASE .............................................................. 4

    A.    Course of Proceedings Below ................................................. 6

    B.    Disposition in the Court Below ............................................... 7

STATEMENT OF FACTS ................................................................. 10

    A.    Defendant Abercrombie & Fitch Stores, Inc. ....................... 10

    B.    Abercrombie Pays Certain Management Employees Pursuant to the Fluctuating Workweek Method of Calculating Overtime Pay ...................................................................................... 10

    C.    Hepler's Employment with Abercrombie ............................ 11

    D.    Opt-In Marceau's Employment with Abercrombie ............. 12

    E.    Opt-In Buckland's Employment With Abercrombie ........... 13

    F.    Defendants' Rule 68 Offers of Judgment Provided Full Relief to Hepler, Marceau and Buckland on their FLSA Claims, And Buckland Accepted Her Offer .............................................. 14

    G.    Communications with Plaintiff's Counsel Regarding Rule 68 Offers of Judgment ............................................................... 16

    H.    Subsequent Opt-Ins and Corresponding Rule 68 Offers of Full Relief ...................................................................................... 17

SUMMARY OF ARGUMENT ........................................................... 19

ARGUMENT .................................................................................. 21

I.    Subject Matter Jurisdiction And The Mootness Doctrine ............. 21

iii

II.   Plaintiffs Concede That Abercrombie's Rule 68 Offers "Satisfied The Monetary Relief On Their FLSA Claims," Which Rendered Their FLSA Claims Moot ........................................................................22

      A.   An Unaccepted Offer Of Judgment Can Moot A Plaintiff's Claim ...................................................................................22

           1.   This Court Has Recognized That An Unaccepted Offer Of Judgment Can Moot A Plaintiff's Claim ...........................22

           2.   The Weight Of District Court Authority In This Circuit Holds That An Unaccepted Rule 68 Offer Of Judgment Can Moot A Plaintiff's Claim ...................................................24

           3.   Other Circuit Courts And District Courts Agree That An Unaccepted Offer Of Judgment Can Moot A Claim ...............26

           4.   Plaintiff's Cited Authorities Are In The Minority, Conflict with *Doyle* And Are Not Binding On This Court .......28

      B.   Abercrombie's Offers Of Judgment Exceeded The Maximum Amount Recoverable On Plaintiffs' FLSA Claims – The FLSA Does Not Permit Plaintiffs To Seek Injunctive Relief ......................31

           1.   The Only Claims Dismissed As Moot Were Plaintiffs' FLSA Claims – They Are Free To Pursue Their State Law Claims In State Court .........................................................31

           2.   The FLSA Does Not Permit An Individual Plaintiff To Seek Injunctive Or Declaratory Relief – That Ability Resides Exclusively With The United States Secretary of Labor ...........................................................................34

III.  The Claims Of The Nine Opt-Ins Who Did Not Receive Offers Were Properly Dismissed Without Prejudice Once It Was Determined That The Lead Plaintiff's FLSA Claim Was Moot – They Are Free To File Their Own Actions ....................................................................39

      A.   Those Individuals Who Opted-In After This Case Became Moot Were Dismissed Without Prejudice And Are Free To File Their Own Claims ..........................................................40

B.     The District Court Was Not Required To Enter Final Judgment
       Prior To Determining That Plaintiffs' FLSA Claim Was Moot .........42

IV.    The District Court's Decision To Decline Jurisdiction Over Plaintiffs'
       State Law Claims Was Proper And Not Prejudicial, As Plaintiffs Are
       Free To Attempt To Refile Those Claims In State Court.............................44

V.     The Interests Of Fairness And Judicial Economy Favor Affirmance ..........44

CONCLUSION ........................................................................................................45

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................47

CERTIFICATE OF SERVICE ................................................................................48

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                         **PAGE**

*Abrams v. Interco Inc.*, 719 F.2d 23 (2d Cir. 1983) ......................................... 19, 22

*Aiken v. County of Hampton*, 977 F. Supp. 390 (D.S.C. 1997) ................................6

*Aleman, et al. v. Innovative Electrical Services*, No. 14-cv-868 (KBF),
   2014 U.S. Dist. LEXIS 139008 (S.D.N.Y. Sept. 15, 2014) ......................... 24, 40

*Ambalu v. Rosenblatt*, 194 F.R.D. 451 (E.D.N.Y. 2000) ........................................26

*Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333 (11th Cir. 2002) ......................34

*Basile v. Connolly*, 538 Fed. App'x 5 (2d Cir. 2013) ..............................................32

*Behnken v. Luminant Mining Co.*, LLC, 997 F. Supp. 2d 511 (N.D. Tex.
   2014)...........................................................................................................................45

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006).........................................33

*Bogle-Assegai v. Connecticut*, 470 F.3d 498 (2d Cir. 2006) ...................................33

*Boutros v. JTC Painting & Decorating Corp.*, 989 F. Supp. 2d 281
   (S.D.N.Y. 2013)........................................................................................................25

*Briggs v. Arthur T. Mott Real Estate LLC*, No. 06-0468, 2006 U.S. Dist.
   LEXIS 82891 (E.D.N.Y. 2006)............................................................... 26, 37, 38

*Briggs v. Arthur T. Mott Real Estate LLC,* No. 06-0468, 2006 U.S. Dist.
   LEXIS 82891 (E.D.N.Y. Nov. 14, 2006)...................................................... 37, 38

*Brotherhood of Locomotive Eng'rs Div. 269 v. Long Island R.R.*, 85 F.3d
   35 (2d Cir. 1996) ......................................................................................................20

*Bruce v. United States*, 759 F.2d 755 (9th Cir. 1985) .............................................38

*Brumley v. Camin Cargo Control, Inc.*, Civ. No. 08-1798 (JLL), 2010
   U.S. Dist. LEXIS 144198 (D.N.J. Apr. 20, 2010)..................................................6

*Cabala v. Crowley*, 736 F.3d 226 (2d Cir. 2013) ....................................................23

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ..........................................32

*Cisneros v. Taco Burrito King 4, Inc.*, No. 13 CV 6968, 2014 U.S. Dist. LEXIS 33234 (N.D. Ill. Mar. 14, 2014) ................................................. 45

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................. 37

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010) .................................. 37

*D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889 (D. Md. 1995) ................................. 45

*Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) ................................. 27

*Darboe v. Goodwill Indus. of Greater NY & N. NJ,* 485 F. Supp. 2d 221 (E.D.N.Y. 2007) .................................................. 20, 26, 43

*Diaz v. Castro*, No. H-13-1242, 2014 U.S. Dist. LEXIS 113064 (S.D. Tex. Aug. 14, 2014) .............................................. 27, 41, 43

*Diaz v. First American Home Buyers Protection Corp.*, 732 F.3d 948 (9th Cir. 2013) .................................................. 29

*Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78 (2d Cir. 2013) ....... passim

*Drake v. Morgan Stanley & Co.*, No. CV 09-6467, 2010 U.S. Dist. LEXIS 47627 (C.D. Cal. Apr. 30, 2010) ................................................. 37

*Eltrich v. Abercrombie & Fitch Stores, Inc.*, Case No. 05-2-38169-8 SEA (2006) .................................................. 5, 10

*Foos v. Boces*, No. 1O-CV-6221-FPG, 2014 U.S. Dist. LEXIS 4169 (W.D.N.Y. Jan. 13, 2014) .................................................. 24, 43

*Franco v. Allied Interstate LLC,* No. 13 Civ. 4053 (KBF), 2014 U.S. Dist. LEXIS 47077 (S.D.N.Y. April 2, 2014) ................................... 24, 41, 43

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) ..................... passim

*Gordon v. Rite Aid Corp.*, No. 09 Civ. 7665, 2012 U.S. Dist. LEXIS 54071 (S.D.N.Y. Mar. 9, 2012) ............................................. 34, 35, 37

*Hendricks v. Inergy, L.P.*, 2013 U.S. Dist. LEXIS 183839 (E.D. Ark. July 18, 2013) .................................................. 27

*Hooks v. Landmark Indus.*, 2014 U.S. Dist. LEXIS 89223 (S.D. Tex. July 1, 2014) .................................................. 27

*Hrivnak v. NCO Portfolio Management, Inc.*, 719 F.3d 564 (6th Cir. 2013) ........................................................................ 34, 35, 36, 38

*Huff v. Ramsay Youth Servs. of Ga.*, No. 5:11-CV-455, 2013 U.S. Dist. LEXIS 97960 (M.D. Ga. July 15, 2013) ............................................34

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008)............33

*Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 2014 U.S. Dist. LEXIS 157571 (S.D.N.Y. 2014) ........................................................42

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013)............................37

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67 (D. Conn. 2014) ................................................................................25

*Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255 (2d Cir. 2006) ...............44

*Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-1136, 2006, U.S. Dist. LEXIS 95785 (C.D. Cal. Sept. 7, 2006) ....................................38

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .............................37

*Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration*, 113 U.S. 33 (1885) ............................................................21

*Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011) ..............................................................................................27

*Mabary v. Home Town Bank, N.A.*, 771 F.3d 820 (5th Cir. 2014) .........................26

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) ..............................................32

*Marek v. Chesny*, 473 U.S. 1 (1985)......................................................................22

*Mason v. Gates Auto. Holdings, Inc.*, No 1:14-cv-00426-RLY-DKL, 2015 U.S. Dist. LEXIS 2410 (S.D. Ind. Jan. 9, 2015) ...................................27

*Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-376-SS, 2013 U.S. Dist. LEXIS 101171 (W.D. Tex. July 11, 2013) ........................28

*McCauley v. Trans Union, L.L.C.*, 402 F.3d 340 (2d Cir. 2005).......... 28, 29, 30, 42

*Mitchell v. Abercrombie & Fitch Co.*, 225 F. App'x. 362 (6th Cir. 2007)......... 5, 10

*Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006) ............................................................................................... 5, 10

*Oakley v. Verizon Communs., Inc.*, 09 Civ. 9175 (CM), 2012 U.S. Dist. LEXIS 12975 (S.D.N.Y. Feb. 1, 2012) ...............................................38

*Oneida Indian Nation v. Madison Cty.*, 665 F.3d 408 (2d Cir. 2011).....................44

*Pla v. Renaissance Equity Holdings LLC*, No. 12 Civ. 5268 (JMF), 2013 U.S. Dist. LEXIS 88424 (S.D.N.Y. June 24, 2013)............................................25

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) .....................................................32

*Ramirez v. Manpower, Inc.*, No. 5:13-CV-2880-EJD, 2014 U.S. Dist. LEXIS 4072 (N.D. Cal. Jan. 10, 2014) .........................................................38

*Richards v. Ernst & Young LLP*, No. C 08-4988, 2010 U.S. Dist. LEXIS 16366 (N.D. Cal. Feb. 24, 2010) ..........................................................38

*Ritz v. Mike Rory Corp.*, 959 F. Supp. 2d 276 (E.D.N.Y. 2013) ............................25

*Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61 (N.D.N.Y 2008) ....................................34

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008) ...........................41

*Silva v. Tegrity Personnel Services, Inc.*, No. 4:13-cv-00860, 2013 U.S. Dist. LEXIS 171465 (S.D. Tex. Dec. 5, 2013) ............................................ 27, 43

*Smith v. Greystone Alliance, LLC*, 772 F.3d 448 (7th Cir. 2014) ................... 35, 36

*Smith v. Wayne Farms, LLC*, No. CV-11-S-3590-NE, 2012 U.S. Dist. LEXIS 63841 (N.D. Ala. May 7, 2012) ..............................................................37

*Smith v. Wynfield Dev. Co.*, 451 F. Supp. 2d 1327 (N.D. Ga. 2006) .....................34

*Solis v. SCA Restaurant Corp,* 938 F. Supp. 2d 380 (E.D.N.Y. 2013)...................11

*Stein v. Buccaneers Limited Partnership*, 772 F.3d 698 (11th Cir. 2014) .............29

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009).......................................21

*Swanigan v. City of Chi.*, No. 12-1261, 2015 U.S. App. LEXIS 396 (7th Cir. Jan. 9, 2015) ................................................................................................26

*United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017 (7th Cir. 2000) ......................38

*United States v. DeCay*, 620 F.3d 534 (5th Cir. 2010) ...........................................38

*United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36 (1st Cir. 2003) .......................................................................38

*Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308 (S.D.N.Y. 2014) ...............................................................................................24

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ........................................21

*Velazquez v. Digital Page, Inc.*, 842 F.Supp.2d 486 (E.D.N.Y. 2012) ..................25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................33

*Ward v. Bank of New York*, 455 F. Supp. 2d 262 (S.D.N.Y. 2006).................. 26, 43

*Warren v. Sessoms & Rogers*, P.A., 676 F.3d 365 (4th Cir. 2012) ........................26

*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004)........................................26

*Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245 (S.D.N.Y. 2013) ......................5, 6

**Statutes**

28 U.S.C. § 1291 ...........................................................................................................2

28 U.S.C. § 1331 ...........................................................................................................2

28 U.S.C. § 1367(c)(3).................................................................................................32

29 U.S.C. § 211(a) .......................................................................................................34

29 U.S.C. § 216(b) .......................................................................................................40

29 U.S.C. § 255(a) .......................................................................................................11

29 U.S.C. § 256(b) .......................................................................................................41

**Rules**

Fed. R. Civ. P. 12(b)(1)...............................................................................................27

**Other Authorities**

New York Civil Practice Law & Rules § 5004 .......................................................15

## **BRIEF FOR DEFENDANTS-APPELLEES**

Defendants-Appellees Abercrombie & Fitch Co.[1] and Abercrombie & Fitch Stores, Inc. (collectively, "Abercrombie" or "Defendants") hereby submit this brief in opposition to Plaintiffs-Appellants Veronique Hepler ("Hepler") and Dominique Marceau's ("Marceau") (collectively, "Plaintiffs") appeal of the United States District Court for the Eastern District of New York's Memorandum and Order granting Defendants' Motion to Dismiss and entry of Judgment for Defendants.

---

[1] Abercrombie & Fitch Co. is a holding company with no store-based employees. (A-138 (Declaration of Luke Adams ("Adams Decl.") at ¶ 3).)  Accordingly, Abercrombie & Fitch Co. was never Veronique Hepler's employer and is not a proper party to this action.

## STATEMENT OF JURISDICTION

Defendants submit that the District Court had jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' federal claims asserted under the Fair Labor Standards Act ("FLSA"). Defendants further submit that the District Court acted well within its discretion to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims brought pursuant to the New York Labor Law ("NYLL"). Moreover, Defendants submit that Plaintiffs failed to put forth any evidence establishing that the Class Action Fairness Act's ("CAFA") jurisdictional requirements were met and the District Court therefore lacked jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1332(d).

Defendants submit that this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## <u>ISSUES PRESENTED FOR REVIEW</u>

1.     Did the District Court correctly determine that Defendants' Rule 68 Offers of complete relief on Plaintiffs' FLSA claims mooted those claims even though the Offers were not accepted.

2.     Did the District Court correctly determine that Defendants' Rule 68 Offers provided complete relief to Plaintiffs on their FLSA claims because Plaintiffs are not entitled to seek injunctive or declaratory relief under the FLSA as a matter of law – that ability residing exclusively with the United States Secretary of Labor.

3.     Did the District Court correctly dismiss without prejudice the claims of nine belated opt-in plaintiffs, leaving those plaintiffs free to file their own actions?

4.     Did the District Court properly decline to exercise jurisdiction of Plaintiffs' remaining state law claims, for which Hepler's potential recovery is capped at $1,600 and Marceau's at $1,300?

## <u>STATEMENT OF THE CASE</u>

The United States Supreme Court has held that a plaintiff asserting an FLSA claim who receives a Rule 68 Offer of complete relief on that claim "has no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013). Here, as the District Court correctly determined, Plaintiffs' FLSA claims became moot upon Abercrombie's issuance of the Rule 68 Offers, which Plaintiffs refused to accept despite their providing full monetary relief on Plaintiffs' FLSA claims. Plaintiffs' FLSA claims were, therefore, properly dismissed. Because no other federal claims existed, the District Court properly exercised its broad discretion to decline further jurisdiction over Plaintiffs' remaining state law claims, which were dismissed without prejudice to refiling in state court. The Constitution simply does not create a separate class of Article III standing for plaintiffs with moot FLSA claims who want to continue litigating in federal court in hopes of stirring up nationwide collective action litigation.

Plaintiffs' underlying claims challenge Abercrombie's use of the fluctuating workweek method of overtime compensation,[2] which has already been found

---

[2] There are five conditions that must be satisfied before an employer may utilize the fluctuating workweek method: (i) the employee's hours must fluctuate from week to week; (ii) the employee must receive a fixed salary that does not vary with

lawful under the FLSA and which fully complies with current DOL authority. Abercrombie's use of the fluctuating workweek method has been approved by the Sixth Circuit in *Mitchell v. Abercrombie & Fitch Co.*, 225 F. App'x 362 (6th Cir. 2007), the Southern District of Ohio in *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006), and the Superior Court of Washington for King County in *Eltrich v. Abercrombie & Fitch Stores, Inc.*, Case No. 05-2-38169-8 SEA (2006).

Plaintiffs' position is that Abercrombie paid them *too much*, contending that Abercrombie's Holiday Pay benefit paid to all store-level associates – regardless of whether they actually work on the applicable holiday – amounts to an hours-based bonus that runs afoul of the fluctuating workweek's "fixed salary" requirement. (Plaintiff's Memorandum in Support of Motion for Conditional Certification at 5-6 (ECF No. 107).) Relevant authorities confirm the contrary – *i.e.*, that Abercrombie's extending the Holiday Pay benefit to its associates – regardless of whether they actually work the Holiday – does not impact the company's ability to utilize the fluctuating workweek method of overtime compensation. *See Aiken v.*

---

the number of hours worked during the week (excluding overtime premiums); (iii) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; (iv) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary, regardless of the number of hours worked; and (v) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours worked. *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 255 (S.D.N.Y. 2013) (internal citations omitted).

*County of Hampton*, 977 F. Supp. 390, 397 (D.S.C. 1997); *Brumley v. Camin Cargo Control, Inc.*, Civ. No. 08-1798 (JLL), 2010 U.S. Dist. LEXIS 144198, at *13-14 (D.N.J. Apr. 20, 2010); *Wills*, 981 F. Supp. 2d at 263 (29 C.F.R. § 778.114 does not forbid fluctuating workweek method where employer pays non-hours-based bonuses).

Plaintiffs correctly state, however, that this appeal does not turn on the merits of their claims. Rather, Plaintiffs contend that the District Court erred in dismissing as moot their FLSA claims despite the fact that Abercrombie made Rule 68 Offers of Judgment of full relief to each Plaintiff in the case at the time the Offers were made. For the reasons stated herein, Plaintiffs' position is incorrect and this Court should affirm the District Court's judgment in its entirety.

## A.    <u>Course of Proceedings Below.</u>

On May 10, 2013, Hepler filed a Complaint against Defendants asserting a nationwide putative collective action under the FLSA for unpaid overtime (Count I), as well as two putative state class claims under the NYLL for unpaid overtime (Count II) and failure to comply with notice and record keeping requirements (Count III). (*See* A-26-30 (Compl. at ¶¶ 39-61 (ECF No. 1)).) Hepler's claims are based solely on her mistaken belief that Abercrombie's use of the U.S. Department of Labor's ("DOL") fluctuating workweek method for calculating overtime pay for Assistant Managers – instead of the "time-and-a-half" method – was improper.

(*Id.*)  On May 16, 2013, Buckland opted into the lawsuit.  (*See* A-37 (Buckland Consent to Join (ECF No. 4)).)  On June 11, 2013, Marceau also opted into the lawsuit.  (*See* A-46 (Marceau Consent to Join (ECF No. 11)).)

As of February 18, 2014, Hepler had not moved for conditional or class certification and no other opt-ins had joined the case.  On that date, Defendants made Rule 68 Offers of Judgment to Hepler, Buckland, and Marceau, which exceeded their maximum recovery available under the FLSA.[3]  (A-115 (Garcia Decl. at ¶ 3).)  Buckland accepted her offer.  (A-116 (Garcia Decl. at ¶ 4).)  Hepler and Marceau rejected their offers by allowing them to expire.  (*Id.*)

As explained below, Hepler's and Marceau's FLSA claims became moot on February 18, 2014, the day the Rule 68 offers were made.  Accordingly, Defendants promptly filed a letter requesting a pre-motion conference on Defendants' Motion to Dismiss Hepler's Complaint as moot pursuant to Rule 12(b)(1).  (*See* A-83-87 (March 5, 2014 Letter (ECF No. 34)).)

## B.    <u>Disposition in the Court Below.</u>

By Memorandum and Order dated October 3, 2014, the District Court granted Abercrombie's Motion to Dismiss as moot Hepler's and Marceau's FLSA claims and exercised its broad discretion to decline to exercise supplemental

---

[3] Defendants' Rule 68 Offers of Judgment also exceeded the maximum recovery available for Hepler and Marceau's NYLL overtime claims.  Buckland was never employed in New York, and therefore cannot assert a claim under the NYLL.  (A-115 (Declaration of Daren S. Garcia ("Garcia Decl.") at ¶ 2).)

jurisdiction over their remaining state law claims. The District Court confirmed Plaintiffs' concession "that the Rule 68 offers exceeded the maximum amount that Hepler and Marceau could recover on their FLSA claim . . .." The District Court further held that, "[c]ontrary to plaintiffs' arguments, the FLSA does not permit the injunctive or declaratory relief they seek"; "the offer of full recovery under the FLSA claim rendered that claim moot notwithstanding potential further recovery of certain damages under the state law claims (over which the Court declines to exercise supplemental jurisdiction)"; and "neither the belated joining of new opt-ins nor plaintiffs' motion for conditional certification made after the Rule 68 Offers precludes dismissal or revives their FLSA claim." (A-149-50.)

The District Court subsequently entered judgment on October 22, 2014, which provided as follows:

- Plaintiffs take nothing;

- Defendant's motion to dismiss is granted;

- The FLSA claims of Plaintiffs Hepler and Marceau are dismissed as moot;

- The state law claims of Plaintiffs Hepler and Marceau are dismissed without prejudice;

- As to the 20 individuals who accepted Abercrombie's Offers, the District Court retained jurisdiction to enforce the Offers;

- The claims of those individuals who did not receive Offers were dismissed without prejudice; and

- As to those individuals who did not receive Offers, the statute of limitations on their FLSA claim was tolled pending appeal.

(A-152-53.) Plaintiffs appealed the District Court's judgment on October 30, 2014. (A-154-55.)

## STATEMENT OF FACTS

**A.** **Defendant Abercrombie & Fitch Stores, Inc.**

Abercrombie is a national retailer that sells men's and women's casual clothing under several brand names, including Abercrombie & Fitch, abercrombie, and Hollister. (A-138 (Adams Decl. at ¶ 4).) Abercrombie operates retail stores in forty-nine states and the District of Columbia. (*Id.* at ¶ 5.)

**B.** **Abercrombie Paid Certain Management Employees Pursuant to the Fluctuating Workweek Method of Calculating Overtime Pay**

Abercrombie used the DOL's fluctuating workweek method for calculating overtime pay for certain management-level employees in certain states, including New York and Maryland. (*Id.* at ¶ 6.) In accordance with the DOL's fluctuating workweek method, Abercrombie paid Assistant Managers a fixed salary regardless of the number of hours worked, plus additional overtime compensation (which Abercrombie called Supplemental Pay) equal to one-half the regular hourly rate for all overtime hours worked. (A-139 (Adams Decl. at ¶ 7).) Abercrombie's use of the fluctuating workweek method was approved by the Sixth Circuit in *Mitchell v. Abercrombie & Fitch Co.*, 225 F. App'x 362 (6th Cir. 2007), the Southern District of Ohio in *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006), and the Superior Court of Washington for King County in *Eltrich v. Abercrombie & Fitch Stores, Inc.*, Case No. 05-2-38169-8 SEA (2006).

10

C.    **Hepler's Employment with Abercrombie**

On September 5, 2010 Abercrombie hired Hepler as a non-exempt associate at the Sunrise, New York abercrombie store ("abercrombie Sunrise"). (A-139 (Adams Decl. at ¶ 8).) On October 2, 2012, Hepler was promoted to Stock Manager and transferred to the Roosevelt Field, New York Abercrombie & Fitch store. (*Id.* at ¶ 9.) On January 19, 2013, Hepler transferred to a non-managerial associate position at abercrombie Sunrise. (*Id.* at ¶ 10.) Hepler was terminated for job abandonment on March 5, 2013. (*Id.* at ¶ 11.) Because Hepler's claims pertain solely to Abercrombie's payment of managers, only her tenure from October 1, 2012 through January 19, 2013 is relevant to this action.[4]

On October 2, 2012, Hepler executed a Supplemental Pay Acknowledgment, wherein she acknowledged that:

> I understand and acknowledge that as an Assistant Manager, Manager-in-Training, Impact Team Manager, or Trainee, that I am paid a straight salary each week regardless of how many hours I actually work. I also understand and acknowledge that my base salary includes compensation for all hours worked, including those over forty. I understand and acknowledge that if I work more than 40 hours in a week, I will be paid an additional amount at ½ time for all hours over 40 to compensate me for all overtime worked.

---

[4] The statute of limitations for Hepler's FLSA claim is a maximum of three years and dates back to May 10, 2010. *See Solis v. SCA Restaurant Corp,* 938 F. Supp. 2d 380, 393 (E.D.N.Y. 2013) (citing 29 U.S.C. § 255(a)).

(A-139 (Adams Decl. at ¶ 12).)  Hepler also executed an Orientation Checklist, wherein she acknowledged her understanding that "Assistant Managers receive a weekly base salary for all hours worked each week.  Hours over 40 per week are paid at the Supplemental Pay rate."  (*Id.* at ¶ 13.)

During the relevant period, Hepler worked 72.07 hours of overtime.  (*Id.* at ¶ 14.)  Her regular rate was $14.90 per hour.  (*Id.* at ¶ 15.)  Accordingly, in accordance with the DOL's fluctuating workweek method, Hepler received Supplemental Pay in the amount of $536.93 ($14.90/hr x 50% x 72.07 hrs = $536.93) during the applicable period.  (A-140 (Adams Decl. at ¶ 16).)

### D.    Opt-In Marceau's Employment with Abercrombie

On November 25, 2009, Abercrombie hired Marceau as a Manager-in-Training at the Shoppingtown, New York Hollister store.  (*Id.* at ¶ 25.)  On March 15, 2010, Marceau was promoted to Assistant Manager.  (*Id.* at ¶ 26.)  On February 8, 2011, Marceau transferred to the Carousel, New York Hollister store, where she remained an Assistant Manager.  (*Id.* at ¶ 27.)  On May 22, 2011, Marceau transferred to the Great Northern, New York Hollister store, where she again remained an Assistant Manager.  (A-141 (Adams Decl. at ¶ 28).)  Marceau quit her employment on July 6, 2011.  (*Id.* at ¶ 29.)  Thus, the relevant dates of Marceau's employment are from November 25, 2009 through July 6, 2011.

At the time of hire, Marceau executed the Orientation Checklist, acknowledging her understanding and agreement that she would be paid: (i) a fixed salary each week regardless of how many hours she worked; and (ii) Supplemental Pay equal to one-half of her regular hourly rate for all overtime hours worked. (*Id.* at ¶ 30.)

During the relevant period, Marceau worked 42.00 hours of overtime. (*Id.* at ¶ 31.) Her regular rate was initially $13.46 and then $13.87 per hour. (*Id.* at ¶ 32.) Accordingly, pursuant to the DOL's fluctuating workweek method, Marceau received Supplemental Pay in the amount of $284.71 (($13.46/hr x 50% x 32.00 hrs) + ($13.87/hr x 50% x 10.00 hrs) = $284.71) during the relevant limitations period. (*Id.* at ¶ 33.)

### E.    <u>Opt-In Buckland's Employment with Abercrombie</u>

On March 28, 2008, Abercrombie hired Buckland as a Manager-in-Training at the Annapolis, Maryland Ruehl store. (A-140 (Adams Decl. at ¶ 17).) On August 8, 2008, Buckland was promoted to Assistant Manager. (*Id.* at ¶ 18.) On January 12, 2010, Buckland transferred to the Annapolis, Maryland Abercrombie & Fitch store, where she remained an Assistant Manager. (*Id.* at ¶ 19.) Buckland resigned her employment on January 11, 2011. (*Id.* at ¶ 20.) The relevant dates of employment therefore are from May 10, 2010 through January 11, 2011.

13

At the time of hire, Buckland executed the Supplemental Pay Acknowledgment and Orientation Checklist, confirming her understanding and agreement that she would be paid: (i) a fixed salary each week regardless of how many hours she worked; and (ii) Supplemental Pay equal to one-half of her regular hourly rate for all overtime hours worked. (*Id.* at ¶ 21.)

During the relevant period, Buckland worked 91.50 hours of overtime. (*Id.* at ¶ 22.) Her regular rate was between $15.12 and $15.58 per hour. (*Id.* at ¶ 23.) Accordingly, pursuant to the DOL's fluctuating workweek method, Buckland received Supplemental Pay in the amount of $718.99 (($15.12/hr x 50% x 9.50 hrs) + ($15.58/hr x 50% x 82.00 hrs) = $718.99) during the applicable period. (*Id.* at ¶ 24.)

## F. **Defendants' Rule 68 Offers of Judgment Provided Full Relief to Hepler, Marceau and Buckland on their FLSA Claims, and Buckland Accepted Her Offer**

On February 18, 2014, Defendants made Rule 68 Offers of Judgment to Hepler, Marceau and Buckland that (i) exceeded the maximum recovery allowable for their overtime claims under the FLSA, and (ii) included reasonable attorneys' fees court costs as determined by the Court. (A-115 (Garcia Decl. at ¶ 3).)

To calculate the Rule 68 Offers of Judgment, Defendants first determined the total amount of Supplemental Pay paid to each individual during the applicable statute of limitations period. (A-116 (Garcia Decl. at ¶ 5).) Second, Defendants

multiplied the total Supplemental Pay paid to each individual by two to determine the alleged underpayment amount – in other words, the difference between the amount of Supplemental Pay received by each individual and the amount Hepler alleges each individual should have received in overtime pay using the time-and-a-half method. (*Id.* at ¶ 6.) Third, Defendants multiplied the alleged underpayment by two to account for alleged liquidated damages. (*Id.* at ¶ 7.) Fourth, Defendants calculated prejudgment interest at a rate of nine percent per annum, as set forth in New York Civil Practice Law & Rules § 5004. (*Id.* at ¶ 8.) Interest was calculated beginning on the first day of the month in which each individual was paid Supplemental Pay through the date of the Offer of Judgment. (*Id.*) Fifth, Defendants rounded the interest up to the nearest $100.00, which necessarily resulted in an overpayment of interest. (*Id.* at ¶ 9.) Sixth, to ensure that each individual was fully compensated for all alleged damages, Defendants added an additional $200.00 to the above calculation. (A-116-17 (Garcia Decl. at ¶ 10).)

In summary, Defendants performed the following computations to calculate the Rule 68 Offers of Judgment:

- Multiply the total Supplemental Pay paid to each individual by four to account for alleged underpayment and alleged liquidated damages;

- Add prejudgment interest (nine percent per annum dating back to the first day of the month of Supplemental Pay and rounded up to the nearest $100.00);

- Add $200.00.

15

(*Id.*)  Pursuant to this method of calculation, on February 18, 2014, Defendants made Rule 68 Offers of Judgment to Hepler (in the amount of $2,647.72), Marceau (in the amount of $1,932.32) and Buckland (in the amount of $4,075.96).  (A-117 (Garcia Decl. at ¶ 11).)  The Rule 68 Offers of Judgment also provided for reasonable attorneys' fees and costs as determined by the Court.  (*Id.* at ¶ 12.)  On March 4, 2014, Buckland accepted her Rule 68 Offer.  (A-73-75.)

### G.  Communications with Plaintiff's Counsel Regarding Rule 68 Offers of Judgment

On February 18, 2014, defense counsel provided Plaintiffs' counsel with a detailed explanation of the method of calculation for the Rule 68 Offers of Judgment, as well as underlying data regarding Plaintiff overtime hours worked and Supplemental Pay received during the applicable limitations periods.  (A-117 (Garcia Decl. at ¶ 13).)  On February 24, 2014, after being informed that Defendants intended to file a motion to dismiss if the Offers of Judgment were not accepted, Plaintiffs' counsel baldly asserted that the offers did not provide full relief.  (*Id.* at ¶ 14.)  Defendants stated that it was their intention to provide full relief and made multiple requests to Plaintiffs' counsel to explain the basis of his contention that the offers did not provide full relief.  (*Id.* at ¶ 15.)  Plaintiff's counsel refused to identify any deficiencies.  (A-117 (Garcia Decl. at ¶ 16); A-122-32 (Garcia Decl. at Ex. A).)  Instead, on March 3, 2014, Plaintiff rushed to file a

pre-hearing letter regarding motions for class and conditional certification.[5] (*See* A-80-82 (March 3, 2014 Letter (ECF No. 32)).)

On March 13, 2014, defense counsel once again asked Plaintiffs' counsel to explain the basis for his contention that Defendants' Rule 68 Offers of Judgment did not provide full relief. (A-117 (Garcia Decl. at ¶ 17).) Defense counsel reiterated that it was Defendants' intention to provide full relief to Hepler and Marceau, and that counsel believed the offers provided full relief. (*Id.* at ¶ 18.) In response, Plaintiffs' counsel stated that he "was not going to do [defense counsel's] work for [them]" and that he "had no obligation to tell [defense counsel] why" the offers were allegedly deficient. (A-118 (Garcia Decl. at ¶ 19).)

### H. Subsequent Opt-Ins and Corresponding Rule 68 Offers of Full Relief

Subsequent to Defendants' Rule 68 Offers of Judgment to Hepler, Buckland, and Marceau, Plaintiff's counsel repeatedly solicited additional opt-ins, which – as of the filing of Abercrombie's Motion to Dismiss – resulted in twenty-four other individuals purporting to join the moot lawsuit. (A-118 (Garcia Decl. at ¶ 20); A-133-37 (Garcia Decl. at Ex. B).) Defendants made Rule 68 Offers of Judgment for

---

[5] Tellingly, on March 13, 2014, Hepler filed a letter motion to compel, in which she argued that that she still needed to conduct collective and class action discovery (A-89-91 (ECF No. 40)), thus evidencing that Plaintiff filed her pre-hearing letter prematurely as a tactic to attempt to avoid dismissal.

full relief to twenty of the twenty-four new opt-ins. (A-118 (Garcia Decl. at ¶ 21).)

All of the Offers of Judgment were accepted by the new opt-ins.[6] (*Id.* at ¶ 22.)

---

[6] In detail: (i) Elsie Turkovich purported to join the case on March 10, 2014, was offered full relief in the amount of $2,455.56 on March 12, 2014, and accepted Defendants' Rule 68 Offer on March 26, 2014; (ii) Dennis Tchir purported to join the case on March 14, 2014, was offered full relief in the amount of $7,394.19 on March 20, 2014, and accepted Defendants' Rule 68 Offer on April 3, 2014; (iii) Keith Arnold purported to join the case on March 21, 2014, was offered full relief in the amount of $948.71 on March 26, 2014, and accepted Defendants' Rule 68 Offer on April 9, 2014; (iv) Jenny Sam purported to join the case on March 26, 2014, was offered full relief in the amount of $18,312.70 on April 9, 2014, and accepted Defendants' Rule 68 Offer on April 23, 2014; (v) Craig Pickett purported to join the case on March 30, 2014, was offered full relief in the amount of $14,734.24 on April 9, 2014, and accepted Defendants' Rule 68 Offer on April 23, 2014; (vi) Ryan Witham purported to join the case on April 8, 2014, was offered full relief in the amount of $2,517.92 on April 23, 2014, and accepted Defendants' Rule 68 Offer on April 23, 2014; (vii) Matthew Allen purported to join the case on April 9, 2014, was offered full relief in the amount of $3,095.24 on April 9, 2014, and accepted Defendants' Rule 68 Offer on April 23, 2014; (viii) Marie-France Philippone purported to join the case on April 10, 2014, was offered full relief in the amount of $2,993.36 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (ix) Dalong Sivongxay purported to join the case on April 11, 2014, was offered full relief in the amount of $5,605.28 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (x) Kristin Dempsey purported to join the case on April 15, 2014, was offered full relief in the amount of $7,908.20 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xi) Mandy Kagol purported to join the case on April 15, 2014, was offered full relief in the amount of $18,035.08 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xii) Ryan Palermo purported to join the case on April 15, 2014, was offered full relief in the amount of $886.28 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xiii) Tiffany Schwab purported to join the case on April 15, 2014, was offered full relief in the amount of $9,007.96 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xiv) Lauren Talmadge purported to join the case on April 15, 2014, was offered full relief in the amount of $9,563.20 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xv) Mark Goudy purported to join the case on April 28, 2014, was offered full relief in the amount of $3,964.76 on

## SUMMARY OF ARGUMENT

This appeal presents two central issues: (1) whether Plaintiffs' FLSA claims were mooted by Abercrombie's Rule 68 Offers of full relief; and (2) if so, was the District Court entitled to decline jurisdiction over Plaintiff's remaining state law claims? As discussed herein, the answer to both questions is "yes," and the District Court's decision should be affirmed.

As to the first issue, this Court and the majority of Circuit and District Courts to address the issue have recognized that an unaccepted offer of judgment can moot a plaintiff's claim. These holdings are consistent with this Court's oft-cited statement in *Abrams v. Interco, Inc.* that "there is no justification for taking

---

May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xvi) Jenny Sam purported to re-join the case on April 28, 2014, was offered full relief in the amount of $913.04 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xvii) Adriana Franceschi purported to join the case on May 9, 2014, was offered full relief in the amount of $18,204.68 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xviii) Brooke Williams purported to join the case on May 9, 2014, was offered full relief in the amount of $5,267.20 on May 12, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xix) Jason Tanner purported to join the case on May 12, 2014, was offered full relief in the amount of $10,214.16 on May 13, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xx) Erika White purported to join the case on May 12, 2014, was offered full relief in the amount of $3,546.84 on May 13, 2014, and accepted Defendants' Rule 68 Offer on May 26, 2014; (xxi) Hilary Gibbs purported to join the case on May 13, 2014 and has not received an Offer of Judgment; (xxii) Shurika Roberts-Crawford purported to join the case on May 26, 2014 and has not received an Offer of Judgment; (xxiii) Reed Hofmann purported to join the case on June 11, 2014 and has not received an Offer of Judgment; (xxiv) Cynthia Chan purported to join the case on June 17, 2014 and has not received an Offer of Judgment. (A-118-20 (Garcia Decl. at ¶ 23).)

the time of the court and the defendant in pursuit of miniscule individual claims which defendant has more than satisfied." 719 F.2d 23, 32 (2d Cir. 1983). The District Court was on solid precedential footing in determining that Plaintiffs could not save their FLSA claim from mootness simply by refusing to accept Abercrombie's offer of full relief.

As to the second issue, where the sole federal claim has been dismissed from an action, it is fundamental that a District Court has the clear discretion to decline the exercise of supplemental jurisdiction over any remaining state law claims. Indeed, "in such cases, the court should ordinarily decline the exercise of such jurisdiction." *Darboe v. Goodwill Indus. of Greater NY & N. NJ,* 485 F. Supp. 2d 221, 224 (E.D.N.Y. 2007) (quoting *Brotherhood of Locomotive Eng'rs Div. 269 v. Long Island R.R.*, 85 F.3d 35, 39 (2d Cir. 1996)).

In sum, Plaintiffs' FLSA claims became moot on February 18, 2014 when Abercrombie issued its Offers of Judgment. As of that date, there were no pending motions for class or collective action certification and no other opt-ins had joined the case. When the offers expired by rule on March 4, 2014, Plaintiffs remained the only individuals in the case and no class or collective action had been certified. Thus, the District Court properly dismissed Plaintiffs' FLSA claims and dismissed without prejudice their state law claims, leaving Plaintiffs free to pursue those claims in state court.

## ARGUMENT

### I. Subject Matter Jurisdiction and the Mootness Doctrine

Article III, § 2 of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "the legal rights of litigants in actual controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39 (1885)). To invoke federal court jurisdiction, a plaintiff must demonstrate that she possesses a legally cognizable interest, or "personal stake," in the outcome of the action. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013).

"A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* (internal citations omitted). As a result, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed

21

and must be dismissed as moot." *Id.* As is pertinent here, "if a defendant consents to judgment in the maximum amount for which the defendant could be held liable, 'there is no justification for taking the time of the court and the defendant in the pursuit of . . . claims which [the] defendant has more than satisfied.'" *Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (citing *Abrams v. Interco Inc.*, 719 F.2d 23, 32 (2d Cir. 1983)).

## II. Plaintiffs Concede that Abercrombie's Rule 68 Offers "Satisfied the Monetary Relief on their FLSA Claims," which Rendered their FLSA Claims Moot

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5 (1985). Plaintiffs concede and the District Court found that Abercrombie's Offers exceeded the maximum amount they could recover on their respective FLSA claims. (Appellants' Br. at 13.) Plaintiffs nevertheless argue that dismissal of their FLSA claims on mootness grounds was improper for two reasons: (1) they did not accept the Offers; and (2) the Offers did not provide equitable relief or monetary damages under Plaintiffs' state law claims. Both arguments are unpersuasive.

### A. An Unaccepted Offer of Judgment Can Moot a Plaintiff's Claim

#### 1. This Court has Recognized that an Unaccepted Offer of Judgment Can Moot a Plaintiff's Claim

This Court has recognized – post-*Genesis* –that an unaccepted Rule 68 offer of judgment can moot a claim. In *Doyle v. Midland Credit Mgmt.,* the plaintiff

asserted claims under the FDCPA. The defendant extended an offer of judgment pursuant to Federal Rule 68, which provided for all monetary relief to which the plaintiff was entitled; however, the plaintiff refused to settle the case for that amount. *Doyle*, 722 F.3d at 80. The district court held that the case was rendered moot as a result of defendant's offer and granted defendants motion to dismiss for lack of subject matter jurisdiction. *Id*. This Court rejected plaintiff's arguments on appeal, stating "we agree with the district court that Doyle's refusal to settle the case in return for Midland's offer of $1,011 (plus costs, disbursements, and attorney's fees), notwithstanding Doyle's acknowledgment that he could win no more, was sufficient ground to dismiss this case for lack of subject matter jurisdiction." *Id.* at 81; *see also Cabala v. Crowley*, 736 F.3d 226, 230 n.4 (2d Cir. 2013) (recognizing that this Court has found a case moot predicated upon the offer of a judgment in favor of the plaintiff).

Here, Abercrombie unconditionally made Rule 68 Offers of Judgment for full relief to Plaintiffs on their FLSA claims. Plaintiffs refused to accept them. Per this Court's decision in *Doyle*, this "was sufficient ground to dismiss the case for lack of subject matter jurisdiction."

**2.**      **The Weight of District Court Authority in This Circuit Holds that an Unaccepted Rule 68 Offer of Judgment Can Moot a Plaintiff's Claim**

The majority of District Courts in this Circuit to consider the issue hold, consistent with *Doyle*, that an unaccepted offer of judgment can moot a plaintiff's claim and result in dismissal for lack of subject matter jurisdiction. *See, e.g., Aleman, et al. v. Innovative Electrical Services*, No. 14-cv-868 (KBF), 2014 U.S. Dist. LEXIS 139008, at *7 (S.D.N.Y. Sept. 15, 2014) (citing *Doyle*, 722 F.3d at 81 ("An action becomes moot once defendant offers plaintiff full relief available under the law, even if the offer is rejected and even if it does not comply with Rule 68.")); *Franco v. Allied Interstate LLC,* No. 13 Civ. 4053 (KBF), 2014 U.S. Dist. LEXIS 47077, at *6 (S.D.N.Y. April 2, 2014) (citing *Doyle*, 722 F.3d at 81 ("defendant's Rule 68 offer, which permitted judgment to be taken against it for $1,501 plus reasonable costs and attorneys' fees as allowed by the Court, exceeds the available amount of statutory damages, costs, and allowable attorneys' fees. Because plaintiff refused that offer, plaintiff's claim is moot.")); *Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308, 309 (S.D.N.Y. 2014) (citing *Doyle*, 722 F.3d at 81 ("Whether [plaintiff] accepts or rejects that offer is immaterial, for the offer makes available to him all of the relief to which he would be entitled if he won his case.")); *Foos v. Boces*, No. 1O-CV-6221-FPG, 2014 U.S. Dist. LEXIS 4169, at *7-8 (W.D.N.Y. Jan. 13, 2014) (relying on *Doyle* and holding that

24

"[b]ecause Defendant has offered the Plaintiff more than he could recover if this action were to proceed to trial, there is no live case or controversy for this Court to adjudicate, and the matter is therefore moot.  As a result, this case is dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and the Clerk is directed to enter judgment in favor of Defendant."); *Pla v. Renaissance Equity Holdings LLC*, No. 12 Civ. 5268 (JMF), 2013 U.S. Dist. LEXIS 88424, at *12 (S.D.N.Y. June 24, 2013) (finding that the "ship has sailed" in the Second Circuit on whether an unaccepted offer of judgment can moot a claim, as the Second Circuit "has made clear . . . that an unaccepted offer of judgment can moot a plaintiff's claim."); *Boutros v. JTC Painting & Decorating Corp.*, 989 F. Supp. 2d 281, 285 (S.D.N.Y. 2013) (citing *Pla*, 2013 U.S. Dist. LEXIS 88424, at *4 (refusal to accept defendant's Offer of Judgment does not protect plaintiff's claim from dismissal)) *Velazquez v. Digital Page, Inc.*, 842 F.Supp.2d 486, 488 (E.D.N.Y. 2012) ("district courts in this circuit have held that a Rule 68 offer of full damages to the named plaintiff on her FLSA claim, even if rejected, may render the case moot and subject to dismissal."); *Ritz v. Mike Rory Corp.*, 959 F. Supp. 2d 276, 279 (E.D.N.Y. 2013) (quoting *Velasquez*, 842 F. Supp. 2d at 488 (same); *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 74 (D. Conn. 2014) ("[i]n this Circuit, a plaintiff is not entitled to continue litigating if the defendant consents to judgment in the maximum amount for which

the defendant could be held liable"); *Ward v. Bank of New York*, 455 F. Supp. 2d 262, 270 (S.D.N.Y. 2006) (unaccepted offer of full relief can moot plaintiff's claims); *Briggs v. Arthur T. Mott Real Estate LLC*, No. 06-0468, 2006 U.S. Dist. LEXIS 82891, at *3 (E.D.N.Y. 2006) (same); *Darboe v. Goodwill Indus. of Greater NY & N. NJ*, 485 F. Supp. 2d 221, 223 (E.D.N.Y. 2007) (same)*; Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000) (same).

### 3. Other Circuit Courts and District Courts Agree that an Unaccepted Offer of Judgment Can Moot a Claim

The majority of Circuit Courts to address the issue likewise hold that an unaccepted Rule 68 Offer can moot a claim. *See Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004) ("An offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation."); *Warren v. Sessoms & Rogers*, P.A., 676 F.3d 365, 371 (4th Cir. 2012) ("When a Rule 68 offer unequivocally offers a plaintiff all of the relief 'she sought to obtain,' the offer renders the plaintiff's action moot."); *Mabary v. Home Town Bank, N.A.*, 771 F.3d 820, 824 (5th Cir. 2014) ("an offer of complete relief (even an unaccepted one) will generally moot a plaintiff's claim"); *Swanigan v. City of Chi.*, No. 12-1261, 2015 U.S. App. LEXIS 396, at *16-17 (7th Cir. Jan. 9, 2015) ("In this circuit an unaccepted Rule 68 offer that meets or exceeds all the relief the plaintiff has demanded eliminates any remaining case or controversy.") (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir.

26

2011) ("'Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge that loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.'")); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1243 (10th Cir. 2011) ("As Rule 68 operates, if an offer is made for a plaintiff's maximum recovery, his action may be rendered moot.").

Finally, numerous District Courts outside the Second Circuit have reached the same conclusion post-*Genesis*. *See, e.g., Mason v. Gates Auto. Holdings, Inc.*, No 1:14-cv-00426-RLY-DKL, 2015 U.S. Dist. LEXIS 2410, 4-5 (S.D. Ind. Jan. 9, 2015) (unaccepted Rule 68 offer moots plaintiff's FLSA collective action claim); *Diaz v. Castro*, No. H-13-1242, 2014 U.S. Dist. LEXIS 113064 (S.D. Tex. Aug. 14, 2014) (rejected offer of full relief moots plaintiff's FLSA collective action claim); *Hooks v. Landmark Indus.*, 2014 U.S. Dist. LEXIS 89223, at *8 (S.D. Tex. July 1, 2014) ("An unaccepted Rule 68 offer of judgment will moot a named plaintiff's claim."); *Silva v. Tegrity Personnel Services, Inc*., No. 4:13-cv-00860, 2013 U.S. Dist. LEXIS 171465, at *9-10 (S.D. Tex. Dec. 5, 2013) (an unaccepted offer of complete relief can moot a plaintiff's claim); *Hendricks v. Inergy, L.P.*, 2013 U.S. Dist. LEXIS 183839, at *15 (E.D. Ark. July 18, 2013) ("a plaintiff's claim can be satisfied without the plaintiff's consent when the defendant offers to pay all that the plaintiff has demanded."); *Masters v. Wells Fargo Bank S. Cent.,*

*N.A.*, No. A-12-CA-376-SS, 2013 U.S. Dist. LEXIS 101171, at *4 (W.D. Tex. July 11, 2013) ("The Fifth Circuit holds an unaccepted offer fully satisfying a claim does moot the claim, and this Court is bound to apply this rule, [plaintiff's] pleas to follow Justice Kagan's dissent notwithstanding.").

###### 4. Plaintiff's Cited Authorities are in the Minority, Conflict with *Doyle* and are Not Binding on This Court

The above authorities notwithstanding, Plaintiffs urge this Court to hold that an unaccepted offer of judgment cannot moot a plaintiff's claim. In support, Plaintiffs rely on Justice Kagan's dissent in *Genesis*, decisions from the Ninth and Eleventh Circuits and three district court decisions in the First and Tenth Circuits. Further, Plaintiffs suggest that this Court's holding in *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340 (2d Cir. 2005) also compels the conclusion that an unaccepted offer of judgment cannot moot a plaintiff's claims. In light of this Court's decision in *Doyle* and the numerous district courts in this Circuit that have decided actions consistent with *Doyle*, Plaintiffs' arguments are not persuasive.

As an initial matter, the Supreme Court clearly has not decided this issue, and Justice Kagan's dissent is just that – a *dissent*. *See Genesis*, 133 S. Ct. at 1528-29 ("While the Court of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot, we do not reach this question, or resolve the split, because the issue is not properly before us."). Importantly, however, the *Genesis* majority did acknowledge that Circuit

28

Courts "have recognized that a plaintiff's claim may be satisfied even without the plaintiff's consent. Some courts maintain that an unaccepted offer of complete relief alone is sufficient to moot the individual's claim." *Id*. at 1529 n.4. The Court did not direct any criticism whatsoever towards the position of these courts. In addition, the Court also made clear that, "[c]ontrary to the dissent's assertion, nothing in the nature of FLSA actions precludes satisfaction – and thus the mooting – of the individual's claim before the collective-action component of the suit has run its course." *Id*. Plaintiff's citation of *Diaz v. First American Home Buyers Protection Corp.*, 732 F.3d 948 (9th Cir. 2013) and *Stein v. Buccaneers Limited Partnership*, 772 F.3d 698 (11th Cir. 2014) is also unavailing because *Doyle* remains good law in this Circuit, as the numerous District Courts cited above have made clear. Thus, given the state of the law in this Circuit, Abercrombie submits that neither Justice Kagan's dissent nor conflicting circuit court cases present a compelling reason to reject *Doyle* and hold that an unaccepted offer of judgment is incapable of mooting a plaintiff's claim.

Finally, this Court's 2005 decision in *McCauley* is distinguishable from – and not inconsistent with – *Doyle* and the District Court's decision below. In *McCauley*, the plaintiff sued defendant for negligently indicating on his credit report that he had two outstanding tax liens. Several months later, defendant made an offer of judgment, which "specified that it not be construed as an admission of

liability and that it remain confidential and filed under seal." *McCauley*, 402 F. 3d at 341. Defendant sought dismissal on mootness grounds. Because plaintiff refused to accept the offer, the district court dismissed the case, holding that the offer constituted everything plaintiff could potentially recover at trial. *Id.* The plaintiff appealed, arguing that the language in defendant's offer requiring that the settlement be confidential and filed under seal frustrated his ability to obtain an enforceable, non-confidential judgment, as well as that the district court erred in not entering judgment against defendant in the amount offered. *Id.* On appeal, this court stated:

> In the absence of an obligation to pay McCauley the $240 in claimed damages, the controversy between McCauley and Trans Union is still alive. When Trans Union acknowledged that it owes McCauley $240, but offered the money with the requirement that the settlement be confidential, Trans Union made a conditional offer that McCauley was not obligated to take. Because judgment was then entered in Trans Union's favor, Trans Union was relieved of the obligation to pay the $240 it admittedly owes, and McCauley, by his refusal of a conditional settlement offer, wound up with nothing. We therefore cannot conclude that the rejected settlement offer, by itself, moots the case so as to warrant entry of judgment in favor of Trans Union.

*Id.* at 342.

Thus, *McCauley* presents a situation very different from that at issue both here and in *Doyle*. Abercrombie did not make a conditional settlement offer to Plaintiffs. Rather, Abercrombie made Rule 68 Offers of Judgment, which were <u>not</u>

conditioned on confidentiality, and pursuant to which Abercrombie offered to enter into to an enforceable judgment. Plaintiffs refused to accept these Offers. Thus, this case is plainly distinguishable from *McCauley* and is instead on par with *Doyle*.

**B.** **Abercrombie's Offers of Judgment Exceeded the Maximum Amount Recoverable on Plaintiffs' FLSA Claims – The FLSA does Not Permit Plaintiffs to Seek Injunctive Relief**

Despite conceding that Abercrombie's Offers exceeded the maximum monetary amount recoverable on their FLSA claims, Plaintiffs argue that dismissal was inappropriate because: (1) they could potentially recover additional monetary amounts on their state law claims; and (2) the Offers did not afford them injunctive and declaratory relief. Plaintiffs' arguments fail in this regard as well.

**1.** **The Only Claims Dismissed as Moot were Plaintiffs' FLSA Claims – They are Free to Pursue Their State Law Claims in State Court**

Plaintiffs' arguments relating to additional amounts potentially recoverable on their state law claims is a red herring. The District Court simply dismissed those claims without prejudice after declining the further exercise of supplemental jurisdiction. (A-151.) The District Court was well within its discretion to do so, and its treatment of Plaintiffs' state law claims was proper. "[T]he exercise of supplemental jurisdiction is left to the discretion of the district court, and this court's review is limited to whether the district court abused its discretion." *Basile*

31

*v. Connolly*, 538 Fed. App'x 5, 8 (2d Cir. 2013) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)); *see also* 28 U.S.C. § 1367(c)(3) (stating that district court "may decline to exercise supplemental jurisdiction over a claim" if court "has dismissed all claims over which it has original jurisdiction").  In fact, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").[7]

To the extent Plaintiffs now argue that the Court erred in failing to exercise jurisdiction over Plaintiffs' NYLL claims under the Class Action Fairness Act ("CAFA"), this argument is without merit.  As an initial matter, Plaintiffs' waived this argument when they failed to raise it before the trial court.  *See In re Nortel*

---

[7] Throughout their Brief, Plaintiffs make statements critical of the District Court's decision to decline the exercise of supplemental jurisdiction over their remaining state law claims.  (*See, e.g.,* Appellant Br. at 37 ("the district court's decision to decline supplemental jurisdiction over their NYLL claims, which they sought to pursue in a Rule 23 class action, was erroneous, for the same reasons that dismissal of the individual claims of Hepler, Marceau, and the nine opt-in Plaintiffs before the court was erroneous.").)  Yet, Plaintiffs offer no authority whatsoever establishing that the District Court's decision, grounded in decades of experience, to clear from its *docket* miniscule state law claims where there exists no independent grounds for federal jurisdiction was anything other than fully consistent with established jurisprudence in this Circuit.

*Networks Corp.* Sec. Litig., 539 F.3d 129, 132 (2d Cir. 2008) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (internal quotation marks omitted) (quoting *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal." (internal quotation marks and citation omitted)).

Moreover, even assuming this argument had not been waived, it still fails. As the party purporting to assert federal subject matter jurisdiction under CAFA, Plaintiffs bear the burden to prove that CAFA's jurisdictional requirements have been met. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) ("Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it. To satisfy its burden, defendant must prove to a reasonable probability that there is the necessary minimal diversity and that the amount in controversy exceeds $5 million."). Here, Plaintiffs have failed to place any evidence before the District Court or this Court establishing that CAFA's jurisdictional requirements have been met. Accordingly, there is no basis upon which to argue that the District Court erred in declining further jurisdiction over Plaintiffs' state law claims pursuant to CAFA.

## 2.    The FLSA does Not Permit an Individual Plaintiff to Seek Injunctive or Declaratory Relief – That Ability Resides Exclusively with the United States Secretary of Labor

The plain language of the FLSA makes clear that an aggrieved employee may **not** bring a claim for injunctive relief under the FLSA because such right rests exclusively with the United States Secretary of Labor. 29 U.S.C. § 211(a). Courts uniformly enforce this express statutory mandate. *See Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 68 (N.D.N.Y 2008) ("An injunction is not an available remedy in an action brought by employees under the FLSA for failure to pay . . . overtime compensation."); *Gordon v. Rite Aid Corp.*, No. 09 Civ. 7665, 2012 U.S. Dist. LEXIS 54071, at *51-53 (S.D.N.Y. Mar. 9, 2012) ("[T]he right to bring an action for injunctive relief under the [FLSA] rests exclusively with the United States Secretary of Labor."); *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1335-36 (11th Cir. 2002) (equitable relief not available under FLSA in employee suit for unpaid overtime); *Huff v. Ramsay Youth Servs. of Ga.*, No. 5:11-CV-455, 2013 U.S. Dist. LEXIS 97960, at *31-32 (M.D. Ga. July 15, 2013) (same); *Smith v. Wynfield Dev. Co.*, 451 F. Supp. 2d 1327, 1338 (N.D. Ga. 2006) (same).

Failing to acknowledge the FLSA's plain language, Hepler relies on two Fair Debt Collection Practices Act ("FDCPA") Rule 23 class actions from the Sixth and Seventh Circuits: *Hrivnak v. NCO Portfolio Management, Inc.*, 719 F.3d 564 (6th Cir. 2013) and *Smith v. Greystone Alliance, LLC*, 772 F.3d 448 (7th Cir.

34

2014). In *Hrivnak*, the court held that defendants' Rule 68 offer did not moot plaintiff's claims under the FDCPA because defendants' offer did not provide for injunctive or declaratory relief. Although defendants argued that neither injunctive nor declaratory relief were available to plaintiff under the FDCPA, the Court held that "the defendants may be right, but each argument goes to the *merits* of Hrivnak's claims, and the merits of those claims are not so insubstantial as to deprive the court of jurisdiction." *Hrivnak*, 719 F.3d at 570.

*Hrivnak* provides no guidance here. There is no dispute that the plain language of the FLSA expressly reserves the ability to seek injunctive relief solely to the Secretary of Labor. See, e.g., *Gordon*, 2012 U.S. Dist. LEXIS 54071, at *51-53 ("[T]he right to bring an action for injunctive relief under the [FLSA] rests exclusively with the United States Secretary of Labor."). Accordingly, unlike the plaintiff's FDCPA claim in *Hrivnak*, the *bona fides* of Hepler's efforts to seek equitable relief under the FLSA "are so insubstantial as to deprive the court of jurisdiction." *Hrivnak*, 719 F.3d at 570.

Plaintiffs' reliance on *Smith* is similarly misplaced. In *Smith*, plaintiff did not seek equitable relief. *Smith,* 772 F.3d at 449. Rather, plaintiff sought only monetary damages, which are expressly provided under the FDCPA. *Id.* The district court found that an unaccepted Offer of Judgment exceeded what plaintiff "could hope to recover," and therefore dismissed plaintiff's claims as moot. *Id.*

35

On appeal, the court noted that "there's no doubt that a court could provide [plaintiff] with relief in the form of money damages." *Id.* Accordingly, the court found that a controversy remained, reasoning: "if A demands $200,000, and B offers $110,000, there is a justifiable controversy even if B insists that A's legal entitlement is less than the offer. To know whether A's entitlement exceeds $110,000, the court would have to decide the merits…. A court cannot decide the merits and then dismiss for lack of subject matter jurisdiction." *Id.* at 449-50. Therefore, the case was remanded to the trial court. *Id.* at 450.

*Smith* also provides no guidance here. *Smith* is silent with regard to equitable relief. Moreover, because Plaintiffs concede that Abercrombie's Offers provided full monetary relief for their respective FLSA claims, the district court did not "have to decide the merits" of Plaintiffs' claims to find that Abercrombie's Offers constituted full relief. *Smith,* 772 F.3d at 449.

Hepler's reliance on *Hrivnak* and *Smith* are also futile because even if equitable relief were potentially available in an employee suit for unpaid overtime under the FLSA (it is not): (i) as a former employee, Hepler lacks Article III standing to seek such relief; and (ii) whether Hepler has Article III standing to bring a claim for equitable relief under the FLSA is not a "merits determination."

36

The law, including within this Circuit, is clear that a former employee lacks the Article III standing required to assert a claim for equitable relief.[8] The overwhelming weight of authority confirms that this holds true regardless of whether former employees bring a claim individually or on behalf of a class that includes current employees. *See Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 922 (D. Ariz. 2010) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 104-05 (1983)) (holding that a former employee lacks standing to seek equitable relief on behalf of a putative class containing current employees); *accord Richards v. Ernst & Young LLP*, No. C 08-4988, 2010 U.S. Dist. LEXIS 16366, at *3 (N.D. Cal. Feb. 24,

---

[8] *See Briggs v. Arthur T. Mott Real Estate LLC,* No. 06-0468, 2006 U.S. Dist. LEXIS 82891, at *9-10 (E.D.N.Y. Nov. 14, 2006) ("Briggs was no longer an employee of Defendant when this action was commenced and fails to allege that he was either discharged or discriminated against for filing this action. He is therefore not entitled to equitable relief, which includes declaratory relief."); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2013) ("a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future"); *Gordon,* 2012 U.S. Dist. LEXIS 54071, at *53 ("Gordon is no longer employed by Rite Aid. Accordingly, she has no standing to seek prospective injunctive relief."); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 205 (S.D.N.Y. 2006) (noting in FLSA action to recover unpaid overtime wages that "injunctive relief would not be available to Plaintiff, nor to other class members who no longer work for Defendants"); *Smith v. Wayne Farms, LLC*, No. CV-11-S-3590-NE, 2012 U.S. Dist. LEXIS 63841, at *10-11 (N.D. Ala. May 7, 2012) (holding plaintiff lacks standing to maintain claim for injunctive or declaratory relief against his former employer); *Drake v. Morgan Stanley & Co.*, No. CV 09-6467, 2010 U.S. Dist. LEXIS 47627, at *19-20 (C.D. Cal. Apr. 30, 2010) ("In the case of an employment action, a former employee lacks standing to sue for declaratory or injunctive relief because he may realize no benefit upon the successful prosecution of his claim.").

2010) (same); *Ramirez v. Manpower, Inc.*, No. 5:13-CV-2880-EJD, 2014 U.S. Dist. LEXIS 4072, at *7 (N.D. Cal. Jan. 10, 2014) (same); *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-1136, 2006, U.S. Dist. LEXIS 95785, at *3 (C.D. Cal. Sept. 7, 2006) (same); *Oakley v. Verizon Communs., Inc.*, 09 Civ. 9175 (CM), 2012 U.S. Dist. LEXIS 12975, at *15 (S.D.N.Y. Feb. 1, 2012) (same); *Briggs*, 2006 U.S. Dist. LEXIS 82891 (same).

Moreover, whether a party has Article III standing to assert a claim is not a "merits determination." *See United States v. DeCay*, 620 F.3d 534, 538 n.2 (5th Cir. 2010) ("Of course whether [appellant] has standing to make the argument is distinct from whether the argument has merit, a matter we address later."); *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003) (citing *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017, 1023-24 (7th Cir. 2000) (courts should not "conflate the constitutional standing inquiry with the merits determination that comes later")); *Bruce v. United States*, 759 F.2d 755, 758 (9th Cir. 1985) ("the standing issue is independent from the merits determination"). Therefore, because Plaintiffs lack Article III standing to bring a claim for equitable relief under the FLSA, and because the inquiry into whether Hepler lacks standing is not a "merits determination," *Hrivnak* cannot protect Hepler's FLSA claim from mootness and dismissal.

38

In sum, it is undisputed that Abercrombie's Rule 68 Offers of Judgment provided full monetary relief for the FLSA claims of Hepler, Marceau and Buckland, who were the only Plaintiffs in the action at the time the Offers were made and at the time the Offers expired.  Further, (i) equitable relief is not available in an unpaid overtime suit brought by an aggrieved employee under the FLSA; and (ii) even if equitable relief were available under the FLSA, as a former employee, Plaintiffs lacked standing to seek such relief.  Therefore, as a matter of law, Defendants' Offers of Judgment exceeded the amount of relief Plaintiffs could possibly recover under the FLSA, which rendered those claims moot.

## III. The Claims of the Nine Opt-Ins who did Not Receive Offers were Properly Dismissed Without Prejudice Once it was Determined that the Lead Plaintiff's FLSA Claim was Moot – They are Free to File Their Own Actions

After determining that Plaintiffs' FLSA claims were moot, the District Court properly dismissed without prejudice the claims of the nine belated Opt-Ins who did not receive offers of judgment, leaving them free to file their own claims. Plaintiffs argue that this was improper because these individuals had purportedly opted-in prior to Hepler filing her conditional certification motion on August 25, 2014, as well as prior to the District Court's entry of judgment on October 22, 2014.  (Appellant's Br. at 33-34.)  Neither argument has merit.

39

**A.** **Those Individuals who Opted-In After this Case Became Moot were Dismissed Without Prejudice and are Free to File Their Own Claims**

As the Supreme Court explained in *Genesis*, "[w]hile the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and 'other employees' similarly situated,' 29 U.S.C. § 216(b), the mere presence of collective action allegations cannot save the suit from mootness once the individual claim is satisfied." *Genesis*, 133 S. Ct. at 1529.

Here, Plaintiffs argue that the District Court improperly deemed the filing of their motion for collective action certification belated given the District Court's requirement of a letter requesting a pre-motion conference prior to filing the actual motion. (Appellant's Br. at 35.) The District Court made no such finding. Rather, the District Court merely considered those individuals who purported to opt-in after Plaintiffs' FLSA claims became moot to be "belated" – the District Court affixed no such label to Plaintiffs' certification motion. (A-150.) Nevertheless, it is undisputed that the nine purported Opt-ins at issue joined the case after Plaintiffs FLSA claims became moot – thus, there was no actual case or controversy for the after-the-fact opt-ins to join, and their claims were properly dismissed without prejudice. *Genesis*, 133 S. Ct. at 1529.

Indeed, following *Genesis*, several courts have addressed and rejected this very argument. *See Aleman, et al.,* 2014 U.S. Dist. LEXIS 139008, at *8 ("[t]he

collective action is moot notwithstanding the fact that several potential plaintiffs have filed opt-in notices. The opt-in notices merely tolled the statute of limitations pending the Court's decision whether to certify a collective class action. *See* 29 U.S.C. § 256(b). Where, as here, no collective class action has been certified, dismissal will not prejudice any opt-in plaintiffs: they remain free to file their own actions for overtime compensation against defendants."). *See also Franco v. Allied Interstate LLC,* No. 13 Civ. 4053, 2014 U.S. Dist. LEXIS 47077, at*6-7 (S.D.N.Y. Apr. 2, 2014) (citing *Genesis*, 133 S. Ct. at 1256 ("It is also clear that mootness of a named plaintiffs individual claim renders a collective action requesting statutory damages under the Fair Labor Standards Act (FLSA) moot even prior to certification.")). The *Franco* court further recognized that "other potential plaintiffs remain free to vindicate their rights in their own suits despite the mootness of plaintiff's individual claim." *Franco*, 2014 U.S. Dist. LEXIS 47077, at *12; *Diaz v. Castro*, No. H-13-1242, 2014 U.S. Dist. LEXIS 113064, at *25-26 n.11 (S.D. Tex. Aug. 14, 2014) (an FLSA plaintiff cannot represent other putative class members until they affirmatively opt-in to the collective action, and there were no opt-ins at the time the offer was made, the plaintiff represented only herself and the offer of judgment fully satisfied her individual claims, thus rendering them moot) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008).

Accordingly, pursuant to the above authorities, the subsequent joining of new opt-ins could not revive Plaintiffs' moot FLSA claims, and the Opt-ins are free to file their own actions.

### B. The District Court was Not Required to Enter Final Judgment Prior to Determining that Plaintiffs' FLSA Claim was Moot

Plaintiffs' contention that the District Court was required to enter judgment in their favor prior to finding their FLSA claims moot is incorrect. Plaintiffs again attempt to rely on an overly expansive reading of *McCauley,* asserting that it requires an offer of full relief and the entry of judgment in favor of plaintiff before mootness will attach. Abercrombie has already set forth above the reasons that *McCauley* is distinguishable from this case. *See* Section II.A.4, *supra.* Plaintiffs also cite *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 2014 U.S. Dist. LEXIS 157571 (S.D.N.Y. 2014) in support of their interpretation of *McCauley* (Appellants Br. at 32-33). However, *Jones-Bartley* recognized that "two clear principles emerge" from the cases considering mootness in the context of Rule 68 Offers: "[f]irst to moot a plaintiff's claim, the defendant must make an offer of judgment; and offer of settlement is insufficient" and "[s]econd, the offer of judgment must fully satisfy the plaintiff's claim." *Id.* at *31. Here, there can be no dispute that Abercrombie's Offers satisfied both of these "principles."

Contrary to Plaintiffs' position, this Court and numerous lower courts in this Circuit have addressed the issue post-*McCauley* and have not agreed with

Plaintiffs' interpretation of that decision. *See Doyle*, 722 F.3d at 81 (recognizing that an unaccepted offer of judgment can moot case and require that judgment be entered in favor of defendant); *Cabala* 736 F.3d at 230 *(*citing *Doyle* and recognizing that this Court has determined that mootness applies upon the "*offer*" of a judgment); *see also*, e.g., *Franco*, 2014 U.S. Dist. LEXIS 47077 (unaccepted offer of full relief did not require entry of judgment against defendant to moot plaintiff's claims); *Foos*, 2014 U.S. Dist. LEXIS 4169 (same); *Aleman*, 2014 U.S. Dist. LEXIS 139008 (same); *Ward* , 455 F. Supp. 2d at 270 (same); *Darboe*, 485 F. Supp. 2d at 224.

Courts outside this Circuit agree that no actual judgment need be entered before mootness will be found.  These courts reiterate that mootness will attach at the time an offer of judgment extending full relief is made.  *See Silva v. Tegrity Personnel Services, Inc.*, No. 4:13-cv-00860, 2013 U.S. Dist. LEXIS 171465, at *9-10 (S.D. Tex. Dec. 5, 2013) (motion to dismiss must be resolved on facts as they stood on date Rule 68 offers to all existing plaintiffs expired, and refusing to consider subsequent opt-ins or attempts to amend complaint); *Diaz*, 2014 U.S. Dist. LEXIS 113064, at* 25-26 n.11 (because an FLSA plaintiff cannot represent other putative class members until they affirmatively opt-in to the collective action, and there were no opt-ins at the time the offer was made, the plaintiff represented

only herself and the offer of judgment fully satisfied her individual claims, thus rendering them moot.).

Accordingly, the weight of authority reveals that Plaintiffs' argument lacks merit. In this Circuit, an unaccepted offer of judgment can moot a plaintiff's claim and no entry of judgment is required for mootness to attach.

## IV.    The District Court's Decision to Decline Jurisdiction Over Plaintiffs' State Law Claims was Proper and Not Prejudicial, as Plaintiffs are Free to Attempt to Refile Those Claims in State Court

Plaintiffs spend a substantial amount of time arguing that the District Court erroneously deemed their putative Rule 23 state law class claims as moot (*see* Appellants' Br. at 37-42). The District Court made no such finding. Rather, the District Court simply dismissed those claims without prejudice to refiling after declining the further exercise of supplemental jurisdiction. (A-153.) Thus, Plaintiffs are free to refile these claims in state court. This was an entirely appropriate exercise of the District Court's discretion. *Oneida Indian Nation v. Madison Cty.*, 665 F.3d 408, 437 (2d Cir. 2011); *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).

## V.    The Interests of Fairness and Judicial Economy Favor Affirmance

Abercrombie's Rule 68 Offers rendered Plaintiffs' FLSA claims moot. Nevertheless – doubtlessly desirous of stirring up a nationwide collective action – Plaintiffs' counsel continued to improperly solicit additional opt-ins to "join" the

moot action. This failed strategy is inconsistent with the interests of fairness and judicial economy. *See Behnken v. Luminant Mining Co.*, LLC, 997 F. Supp. 2d 511, 516 (N.D. Tex. 2014) ("courts…have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation") (citing *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995))*; Cisneros v. Taco Burrito King 4, Inc.*, No. 13 CV 6968, 2014 U.S. Dist. LEXIS 33234, at *11 (N.D. Ill. Mar. 14, 2014) (Plaintiff's counsel has "a fiduciary duty to act in the best interests of Plaintiff – not a potential class of plaintiffs. That remains true even when Plaintiff's best interests are satisfied by a complete offer of settlement, removing controversy from the case and possibly preventing an action from moving forward as a class action."). Thus, any "inefficiencies" created by dismissing Plaintiffs' case without prejudice as to her state law claims are solely of Plaintiff's counsel's making and weigh in favor of affirmance.

## CONCLUSION

For the reasons discussed herein, Plaintiffs' FLSA claims became moot once Abercrombie extended its Rule 68 Offers of complete relief. That Plaintiffs refused to accept the Offers does nothing to change the fact that, at that point, there was no longer any actual case or controversy as to Plaintiffs' FLSA claim. Thus, the District Court properly determined that Plaintiffs' failed on mootness grounds

and dismissed their and the other opt-ins remaining claims without prejudice. This was consistent with applicable precedent in this Circuit.

To hold otherwise would be to declare that, in this Circuit, a defendant cannot terminate litigation by offering to confess judgment on a claim in an amount beyond what plaintiff could recover at trial. This is inconsistent with the spirit of Rule 68 and would inescapably require the creation of a new category of standing under the Constitution. Such a result is untenable and the District Court's judgment should, therefore, be affirmed.

Dated: January 23, 2015

Respectfully submitted,

/s/ Mark A. Knueve
Mark A. Knueve
Daren S. Garcia
Michael J. Ball
Natalie M. Mclaughlin
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay St., P.O. Box 1008
Columbus, OH 43216-1008
Tel: (614)464-6387

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type Volume Limitation,
Typeface Requirements, and Type Style Requirements

      1.    This brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)(B) because:

✓    this brief contains 11,085 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

      2.    This brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

✓    this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010, in 14 point font size, Times New Roman.

/s/ Mark A. Knueve
Mark A. Knueve

*Attorney for Defendants-Appellees*

Dated:  January 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that, on January 23, 2015, I electronically filed the foregoing Brief for Defendants-Appellees with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.


/s/ Mark A. Knueve
Mark A. Knueve

*Attorney for Defendants-Appellees*